[Cite as *Bowditch v. Mettler Toledo*, 2013-Ohio-4206.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

James G. Bowditch,                                :

      Plaintiff-Appellant,              :              No. 12AP-776
                                                                                     (C.P.C. No. 09CV-6735)
v.                                                          :

Mettler Toledo International, Inc. et al.,     :              (REGULAR CALENDAR)

      Defendants-Appellees.         :

---

D E C I S I O N

Rendered on September 26, 2013

---

*Law Offices of Russell A. Kelm*, and *Russell A. Kelm*, for appellant.

*Ice Miller LLP, James E. Davidson* and *Eve M. Ellinger*, for appellees.

---

APPEAL from the Franklin County Court of Common Pleas

McCORMAC, J.

{¶ 1}  Plaintiff-appellant, James G. Bowditch, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Mettler Toledo International, Inc. ("Mettler Toledo") and Frederick E. Brong, on appellant's age discrimination claim under R.C. Chapter 4112. Because the trial court erred in concluding the evidence presents no genuine issue of material fact, we reverse.

I. History

{¶ 2}  Appellant first worked for Mettler Toledo from 1978 until 1982. In May 1984, Mettler Toledo rehired appellant to work at the company's Worthington, Ohio location.  On September 8, 2003, appellant accepted a position as a supplier manager at Mettler Toledo's Masstron facility, where he worked until his termination from

employment on February 10, 2009. At the time of his termination, appellant was 50 years old.

{¶ 3}  Appellees terminated appellant's employment following a January 29, 2009 incident in which Frederick Brong, human resources and special projects leader for Mettler Toledo at Masstron, noticed two employees at Masstron reading an e-mail on the production floor computer. Brong reviewed the contents of the e-mail, found it contained nonwork material, and noted that appellant sent the e-mail to the production floor computer from his company e-mail address. Brong inspected the production floor computer and discovered additional nonwork e-mails sent to the production floor computer, some of which contained sexually explicit material. Attached to one such e-mail was a file entitled "Blonde Cowgirl" that contained multiple sexually explicit photographs of a woman; Brong determined appellant originally sent the e-mail to the company e-mail address of Randy Dillon, another employee at Masstron, who forwarded it to the production floor computer.

{¶ 4}  At the time of the incident, Mettler Toledo's employee handbook governed appellant's performance. The handbook provided that Mettler Toledo reserved the right to terminate employment at any time and that any employee found to have violated company rules was subject to discharge. Pursuant to the handbook's policy on computer and e-mail systems usage ("policy"), Mettler Toledo prohibited the use of computers and e-mail in the workplace "in ways that are disruptive, offensive to others, or harmful to morale." (R. 79, exhibit No. 5, at 30.) The policy specifically prohibited "the display or transmission of sexually explicit images, messages, and cartoons," and stated "[o]ther such misuse includes, but is not limited to, ethnic slurs, racial comments, off-color jokes, or anything that may be construed as harassment or showing disrespect for others." (R. 79, exhibit No. 5, at 30.)

{¶ 5}  The handbook provided that violations of the policy, including "[p]articipating in the viewing or exchange of pornography or obscene materials" and "[s]ending or posting messages or material that could damage the organization's image or reputation," subjected employees to "disciplinary action, up to and including termination of employment." (R. 79, exhibit No. 5, at 30-31.) On April 15, 2005, appellant signed a form acknowledging his receipt of the handbook and affirming that either he or Mettler

Toledo could terminate his employment at any time and for any reason. On May 4, 2007, after participating in harassment awareness training, appellant signed a form indicating he received, read, and understood the policy. Appellant further agreed to abide by the policy, including being subject to corrective action for failing to abide by the policy.

{¶ 6} On February 2, 2010, appellant met with Brong and Terry Every, appellant's supervisor. At the meeting, appellant admitted to sending the e-mail containing the "Blonde Cowgirl" attachment from his Mettler Toledo e-mail account during business hours to other employees and nonemployees. Brong suspended appellant and Dillon indefinitely while he reviewed their computers for additional evidence. Brong discovered appellant's internet history had been deleted from his computer, appellant and Dillon stored sexually explicit and nonbusiness related material on their computers, and appellant and Dillon forwarded such material from their company e-mail addresses to family, friends, co-workers, and Mettler Toledo suppliers.

{¶ 7} Following his review of the employees' computers, Brong discussed his findings with T. Alton Hill, general manager for the Masstron facility, and Jeff Adams, human resources supervisor for Mettler Toledo North America, and he recommended that Mettler Toledo terminate both appellant and Dillon for violations of the policy. Both Hill and Adams agreed with Brong's recommendation. Brong notified appellant of his termination by a signed letter indicating appellant's discharge resulted from the "violation of several Company policies, including but not limited to, Computer and E-mail Systems Usage, Internet System Usage" because appellant's computer contained "data which was sexually explicit, and racially and ethnically offensive." (R. 79, Brong Affidavit, at ¶ 15 and exhibit No. 4.)

{¶ 8} Appellant ultimately filed a complaint, pursuant to a motion to amend, listing Mettler Toledo, Inc. and Frederick Brong as appellees and alleging age discrimination in violation of R.C. Chapter 4112. Following their answer, appellees filed a motion for summary judgment on July 1, 2010, asserting no genuine issues of material fact remained for trial because appellant could not establish a prima facie case and could not prove the legitimate, nondiscriminatory reason appellees supplied was pretextual. Appellees further filed, on September 10, 2010, three motions to strike the affidavits of appellant, Grant Davis, and Douglas W. Wigglesworth from the record. On August 6,

2012, the trial court filed an entry denying the motions to strike affidavits from the record, granting appellees' motion for summary judgment, and entering judgment in favor of appellees.

## II. Assignments of Error

{¶ 9} Appellant appeals, assigning two errors:

I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S' [sic] MOTION FOR SUMMARY JUDGMENT ON [APPELLANT'S] CLAIM OF AGE DISCRIMINATION.

II. THE TRIAL COURT ERRED IN STRIKING LARGE PORTIONS OF THE AFFIDAVITS [APPELLANT] SUBMITTED IN OPPOSITION TO SUMMARY JUDGMENT.

## III. First Assignment of Error – Age Discrimination Claim

{¶ 10} Appellant's first assignment of error asserts the trial court erred in granting summary judgment to appellees. An appellate court's review of summary judgment is conducted under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists; (2) the moving parties are entitled to judgment as a matter of law; and (3) reasonable minds viewing the evidence most strongly in favor of the nonmoving party could reach but one conclusion, and that conclusion is adverse to the nonmoving party.  Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181 (1997).

{¶ 11} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment, but if the moving party satisfies its initial burden, summary judgment is appropriate unless the nonmoving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-

1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 12} "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

{¶ 13} Appellant argues he established a genuine issue of material fact for trial as to whether appellees discriminated on the basis of age in violation of R.C. Chapter 4112. R.C. 4112.14(A) generally prohibits discriminatory employment practices, including discrimination on the basis of age. *See Meyer v. United Parcel Serv., Inc.*, 122 Ohio St.3d 104, 2009-Ohio-2463, ¶ 9. R.C. 4112.02(N) provides a right to file an age discrimination action: "An aggrieved individual may enforce the individual's rights relative to discrimination on the basis of age as provided for in this section by instituting a civil action, within one hundred eighty days after the alleged unlawful discriminatory practice occurred, in any court with jurisdiction for any legal or equitable relief that will effectuate the individual's rights."

A. *McDonnell Douglas Burden - Shifting Framework*

{¶ 14} "To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent" and may establish such intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th Dist.1998), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583 (1996). Absent direct evidence of age discrimination, a plaintiff may indirectly establish discriminatory intent using the analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as the Supreme Court of Ohio adopted in *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146 (1983), and modified in *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723. Appellant relies on indirect proof.

### 1. The Prima Facie Case

{¶ 15} Under the test as revised in *Coryell*, a plaintiff must demonstrate that he or she: "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." *Coryell* at paragraph one of the syllabus, modifying and explaining *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501 (1991), syllabus. Alternatively, a plaintiff can establish the fourth prong by demonstrating that a "comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir.1992); *Clark v. Dublin*, 10th Dist. No. 01AP-458, 2002-Ohio-1440. Establishing a prima facie case " 'creates a presumption that the employer unlawfully discriminated against the employee.' " *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 11, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

### 2. The Employer's Burden of Production

{¶ 16} If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for discharging the employee. *Caldwell v. Ohio State Univ.*, 10th Dist. No. 01AP-997, 2002-Ohio-2393, ¶ 61, quoting *Burdine* at 253. The employer meets its burden of production by submitting admissible evidence that " '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action,' " and in doing so rebuts the presumption of discrimination that the prima facie case establishes. (Emphasis sic.) *Williams* at ¶ 12, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

### 3. Pretext

{¶ 17} Finally, if the employer meets its burden of production, a plaintiff must prove by a preponderance of the evidence that the employer's legitimate, nondiscriminatory reasons were merely a pretext for unlawful discrimination. *Barker* at 148. " 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the [appellant] remains at all times with the [appellant]." O*hio Univ. v. Ohio Civ. Rights Comm.*, 175 Ohio App.3d 414, 2008-Ohio-1034, ¶ 67 (4th Dist.), quoting *Burdine* at 253. " '[A] reason cannot be proved to be "a pretext *for discrimination*" unless' " appellant demonstrates " '*both* that the reason was false, *and*

that discrimination was the real reason.' " (Emphasis sic.) *Williams* at ¶ 14, quoting *St. Mary's Honor* at 515.

        **B.** *Appellant Established Prima Facie Case*

{¶ 18} The trial court concluded appellant established a prima facie case, but did not discuss how appellant established the fourth element of the prima facie case. Appellant contends he established the fourth element by demonstrating appellees treated substantially younger, similarly-situated co-workers more favorably.

{¶ 19} To demonstrate that a co-worker is similarly-situated, "the [appellant] and the employee with whom the [appellant] seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.' " (Emphasis sic.) *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998), quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994). Courts must determine the relevant factors based upon the particular circumstances of the case. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 348 (6th Cir.2012); *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 394 (6th Cir.2008). In cases alleging a "discriminatory disciplinary action resulting in the termination of the [appellant's] employment * * * 'the individuals with whom the [appellant] seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.' " *Ercegovich* at 352, quoting *Mitchell* at 583. *See also Pierce* at 802; *Bucher v. Sibcy Cline, Inc.*, 137 Ohio App.3d 230, 243 (1st Dist.2000).

{¶ 20} Appellant asserts Grant Davis received more favorable treatment despite engaging in substantially similar conduct. Davis began working for Mettler Toledo in January 1988 at Masstron, where he remained until his termination as part of a reduction in force in January 2009. During the course of his employment, Davis received several disciplinary warnings for violations of the company's policy.

{¶ 21} In November 1999, Davis used his company e-mail account to forward an e-mail containing nonwork material to a co-worker. Jeff Siefker, Davis's supervisor, described the e-mail as "extremely inappropriate" at the time of the incident and gave Davis a verbal warning. (Appellees' Brief; Appendix, at 10, hereinafter "Appx., at ____.".) On January 27, 2000, Davis forwarded another nonwork-related e-mail to a co-worker.

Siefker issued Davis a three-day suspension and placed a record of the disciplinary action in Davis's file.

{¶ 22} In February 2002, a co-worker noticed an explicit image on Davis's computer and reported the incident to management.  William Eilenfeld, Davis's supervisor at the time of the incident, and Trent Metzger, a human resource manager, retrieved and reviewed images from Davis's network drive.  On February 18, 2002, Eilenfeld sent himself an e-mail stating the files were "very explicit." (Appx., at 12.)  On the same date, Eilenfeld issued Davis a written "1st [and] Final Warning," noting that Davis's network drive contained "[s]exually explicit" images in violation of the computer and e-mail systems usage policy and ordering Davis to remove all improper materials from his drive within 24 hours. (Appx., at 13.)  The warning listed "[i]mmediate [t]ermination" as the "[c]onsequence should incident occur again," and Eilenfeld noted the warning would remain in Davis's permanent file. (Appx., at 13.)

{¶ 23} On December 8, 2008, Eilenfeld ordered an examination of Davis's internet activity after receiving an e-mail from Davis containing a link to a nonwork website.  The examination revealed Davis spent "large blocks of time" viewing nonwork websites, some of which included "inappropriate" and "explicit" content. (Appx., at 14.) On December 15, 2008, Eilenfeld and Brong, who was the human resources supervisor at the time of the incident, issued Davis a written final warning noting the previous final warning given to Davis on February 18, 2002.  The warning provided that "[i]mmediate termination will result from any work rule violation in the next 90 days" and "[a]ny work rule violation related to computer usage will result in immediate termination during the duration of [Davis's] employment." (Appx., at 14.)

{¶ 24} Appellees assert Davis is an inappropriate comparator as a matter of law. Initially, appellees contend different supervisors disciplined appellant and Davis. Relying on *Sutherland v. Nationwide Gen. Ins. Co.*, 96 Ohio App.3d 793 (10th Dist.1994), appellant nonetheless asserts that having different supervisors does not preclude comparison of employees. Contrary to appellant's contention, however, *Sutherland* did not disregard the same supervisor criterion; instead, it rejected the employer's "narrow interpretation" of the same supervisor requirement because the "alleged comparables did not report directly to [appellant's] *immediate* supervisor." (Emphasis added.)  *Id.* at 802-

03. Further, *Sutherland* is distinguishable as the employee in that case alleged discriminatory hiring practices, whereas here appellant alleges disparate disciplinary treatment, and having the same supervisor is a relevant factor in disciplinary cases. *See Ercegovich* at 352; *Mittler v. OhioHealth Corp.*, 10th Dist. No. 12AP-119, 2013-Ohio-1634, ¶ 36; *Wigglesworth v. Mettler Toledo Internatl., Inc.*, 10th Dist. No. 09AP-411, 2010-Ohio-1019, ¶ 28; *Valentine v. Westshore Primary Care Assoc.*, 8th Dist. No. 89999, 2008-Ohio-4450, ¶ 89-90; *Bucher* at 243.

{¶ 25} Whereas different supervisors disciplined Davis in November 1999, January 2000, and February 2002, appellees do not dispute that Brong was responsible for Davis's discipline in December 2008. Brong's admission that he recommended appellant's termination, coupled with his signature on appellant's termination notification, constitute sufficient evidence to demonstrate that Brong was responsible for appellant's discipline. Accordingly, the "same supervisor" requirement is met for purposes of a comparison between appellees' treatment of Davis in December 2008 and appellant's discipline in January 2009. *Bucher* at 243.

{¶ 26} Appellees next assert Davis is an inappropriate comparator because appellant and Davis did not engage in similar misconduct. Appellees contrast the type and quantity of objectionable content found on Davis's and appellant's computers, observing that material on Davis's computer was images of women in bikinis, whereas appellant possessed obscene and pornographic images. Davis, however, stated that he spent about one-half of his workday using his computer for nonbusiness matters, including visiting woodworking websites, transmitting nonwork e-mails similar to the "Blonde Cowgirl" e-mail appellant sent, and "[l]ooking at porn" on the internet. (Davis Depo., at 16.) Despite appellees' averments that they possessed no knowledge of such behavior, appellees' 2008 search of Davis's internet history revealed that he spent "large blocks of time" viewing "inappropriate" and "explicit" content. (Appx., at 14.) Although material differences in the conduct of employees will preclude comparison, appellant need not demonstrate precise equivalence in culpability for purposes of establishing a prima facie case. *Rutherford v. Britthaven, Inc.*, 452 Fed.Appx 667, 671 (6th Cir.2011); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir.2000); *Harrison v. Metro. Govt. of Nashville & Davidson Cty., Tenn.*, 80 F.3d 1107, 1115 (6th Cir.1996).

{¶ 27} Appellees further contend that appellant's transmission of objectionable content from his company e-mail account to e-mail accounts outside of the company renders his conduct more serious. The distinction here is not controlling given the scope of both Davis's and appellant's conduct. Notably, Brong did not terminate Davis even though Davis violated the policy several times before, and Davis received a prior final warning noting termination would result from the next instance of misconduct. *See Harrison* at 1116 (observing evidence of different treatment because the employer considered appellant's infractions cumulatively, whereas the employer considered infractions of other comparable employees separately).

{¶ 28} Although Davis's and appellant's conduct may not be precisely equivalent, the evidence, viewed in a light most favorable to appellant, at least raised an issue of material fact regarding whether their conduct was substantially similar. *See Bucher* at 243 (concluding reasonable minds could differ on whether differentiating or mitigating circumstances explained employer's more favorable treatment of comparators); *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir.2008) (reversing grant of summary judgment where factual inferences were drawn solely in favor of the defendant); *Chattman* at 348-49.

{¶ 29} Finally, appellees contend Davis, who was born on May 2, 1964, is not substantially younger than appellant, who was born on April 21, 1958. Appellant responds that an age difference of six or more years is a question of fact for the jury. We measure the difference in age of the comparators at the times when they allegedly received disparate treatment. *See Bucher* at 241-42. At the time of his termination, appellant was over six years older than Davis was at the time of his December 2008 incident.

{¶ 30} In *Grosjean v. First Energy Corp.*, 349 F.3d 332 (6th Cir.2003), the court held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Id.* at 340. The Supreme Court, however, rejected applying a bright-line standard and instead directed courts to consider "the particular circumstances of each case." *Coryell* at ¶ 23. Although an age difference of six years may not satisfy the substantially younger requirement in some circumstances, whether Davis is substantially younger than appellant presents a question for the jury in this instance. *See Blizzard v.*

*Marion Technical College*, 698 F.3d 275, 284 (6th Cir.2012) (finding that, although a "six-and-a-half year age difference * * * 'is perhaps not the best evidence to create an inference of age discrimination,' it was nonetheless sufficient to create an issue of material fact at the summary judgment stage"); *Coryell* at ¶ 26 (concluding courts "are vested with the discretion to determine, based on the circumstances of the case, whether an employee is substantially younger than a protected employee").

{¶ 31} Because reasonable minds could differ as to whether similarly-situated employees were treated more favorably than appellant, appellant has established the fourth element of his prima facie case for purposes of summary judgment. *See Bucher* at 243; *Jones v. Potter*, 488 F.3d 397, 405-06 (6th Cir.2007).

    C. *Appellees Articulated a Legitimate, Nondiscriminatory Reason for Terminating Appellant's Employment*

{¶ 32} Because appellant established a prima facie case of discrimination, the second step in the *McDonnell Douglas* analysis involves examining whether appellees asserted appellant's termination resulted from a violation of the policy. Appellees supported the legitimate, nondiscriminatory reason through Davis's and appellant's testimony.

{¶ 33} Appellant does not dispute that he possessed a copy of the policy and signed an acknowledgment stating he received, read, and understood the policy. Appellant admits he sent e-mails containing sexually explicit material in violation of the policy. Davis testified that appellant sent e-mails containing material similar to the "Blonde Cowgirl" e-mail attachment at the rate of one or two per day for years, amounting to "[h]undreds, thousands" of e-mails. (Davis Depo., at 86-87.) Appellant does not contest that appellees set forth a legitimate, nondiscriminatory reason by "clearly set[ting] forth, through the introduction of admissible evidence, the reasons for the [appellant's] rejection." *Burdine* at 255.

    D. *Appellant Raised a Genuine Issue of Material Fact as to Whether Appellees' Reason Was Pretextual*

{¶ 34} The final step in the *McDonnell Douglas* analysis is whether appellant established appellees' legitimate nondiscriminatory reason was pretext for unlawful discrimination because of age. The trial court found appellant failed to establish appellees'

reason was pretext because he did not demonstrate that appellees "applied [the] policy differently in disciplining younger, similarly situated co-workers." (Decision and Entry, at 9.)

{¶ 35} In order to establish that appellees' reason was pretext, appellant must prove either " '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.' " *Sweet v. Abbott Foods, Inc.*, 10th Dist. No. 04AP-1145, 2005-Ohio-6880, ¶ 34, quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). *Knepper v. Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 12 (stating "[a] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason"). The ultimate burden rests with appellant to present evidence that demonstrates discrimination was the real reason for the termination. *Dautartas v. Abbott Laboratories*, 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 31 (stating " '[t]he ultimate inquiry in an employment-based age discrimination case is whether an employer took adverse action "because of" age; that age was the "reason" that the employer decided to act' "), quoting *Miller v. Potash Corp. of Saskatchewan, Inc.*, 3d Dist. No. 1-09-58, 2010-Ohio-4291, ¶ 21, citing *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167 (2009).

{¶ 36} Appellant asserts he can demonstrate appellees' reason was pretextual because it is insufficient under the third prong of the *Manzer* test. To do so, appellant must present "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the [appellant]." *Manzer* at 1084. Because, as noted above, appellant raised a genuine issue of material fact as to whether a substantially younger, similarly-situated co-worker was treated more favorably despite engaging in substantially similar conduct, appellant has demonstrated appellees' reason was insufficient under *Manzer*. In order to ultimately establish a disparate treatment claim, appellant must "prove that age was the 'but-for' cause of the employer's adverse decision"; however, for the purposes of summary judgment, appellant has set forth evidence of pretext. *Gross* at 176.

{¶ 37} Appellant having set forth sufficient evidence to avoid summary judgment on his prima facie case and pretext, the trial court erred in granting appellees' motion for summary judgment on appellant's age discrimination claim. Accordingly, we sustain appellant's first assignment of error.

## IV. Affidavits

{¶ 38} In his second assignment of error, appellant asserts the trial court erred by ruling portions of the affidavits of appellant, Davis, and Wigglesworth were inadmissible. In light of our ruling on appellant's first assignment of error, appellant's second assignment of error is moot and we need not address it. App.R. 12(A)(1)(c). *See Watson v. D & T Limousine Serv., Inc.*, 11th Dist. No. 92-A-1734 (Mar. 26, 1993); *Bank One, Columbus, N.A. v. Girardi's Restaurant & Bar, Inc.*, 10th Dist. No. 93AP-1024 (Mar. 3, 1994).

## V. Disposition

{¶ 39} Having sustained appellant's first assignment of error and rendered moot his second assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand for further proceedings.

*Judgment reversed*
*and cause remanded.*

TYACK and CONNOR, JJ., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).