[Cite as *Hughes v. Youngstown State Univ.*, 2021-Ohio-2079.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Jimmy Hughes, :

    Plaintiff-Appellant, : No. 20AP-73
(Ct. of Cl. No. 2017-00458JD)

v. :

    (ACCELERATED CALENDAR)

Youngstown State University, :

    Defendant-Appellee. :

---

D E C I S I O N

Rendered on June 22, 2021

---

**On brief:** *Percy Squire*, for appellant. **Argued:** *Percy Squire.*

**On brief:** *Dave Yost*, Attorney General, *Randall W. Knutti,* and *Timothy M. Miller*, for appellee. **Argued:** *Timothy M. Miller.*

---

APPEAL from the Court of Claims of Ohio

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Jimmy Hughes, appeals from a decision of the Court of Claims of Ohio granting the motion for summary judgment of defendant-appellee, Youngstown State University ("YSU"), on Hughes's claims of race discrimination and retaliation. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On May 18, 2017, Hughes filed a complaint against YSU alleging claims of race discrimination and retaliation pursuant to R.C. Chapter 4112, 42 U.S.C. 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. The claims arose from Hughes's application for employment with YSU for the position of chief of police of the YSU Police Department. Hughes, who is African American and previously worked as the chief of police

for the city of Youngstown from 2006-2011, alleged in his complaint that YSU refused to consider his application for employment and that YSU's decision to hire a white man for the position constituted racial discrimination.

{¶ 3} In its answer filed June 5, 2017, YSU agreed it hired a white male to fill the chief of police position but asserted it did not refuse to consider Hughes's application because of his race. Rather, YSU asserted that by the time Hughes submitted his application for the chief of police position, YSU had already completed its initial review of the applicants, had already conducted first-round interviews, and had already scheduled second-round interviews, thus having no need to review additional candidates by the time Hughes submitted his application. Specifically, YSU stated it posted the position online on February 15, 2017 and Hughes did not submit his application until March 23, 2017.

{¶ 4} YSU filed a motion for summary judgment on October 11, 2019. In the evidentiary materials YSU filed supporting its motion for summary judgment, YSU demonstrated it formed a four-person search committee in February 2017 to review applications, interview applicants, and recommend which candidates should be considered to YSU's hiring manager. That four-person committee met on March 3, 2017 and again on March 10, 2017. At the March 10, 2017 meeting, the search committee reviewed the approximately 22 applications that had been submitted and selected four applicants to be interviewed in first-round videoconferencing interviews. The search committee then recommended that three of those four applicants be invited to campus for in-person interviews. YSU completed the second-round interview process from April 4 to April 6, 2017 and extended an offer of employment to YSU's interim chief of police, Shawn Varso, who had previously been a lieutenant with the YSU Police Department.

{¶ 5} When Hughes submitted his application on March 23, 2017, YSU still had the job posting on its website. It was YSU's standard practice to keep job postings online until it had officially filled the position. However, the committee did not evaluate any applicants who submitted applications after March 10, 2017, believing it had already identified several qualified applicants during their initial review. YSU received eight applications for the chief of police position after March 10, 2017, including Hughes's application, and YSU did not consider any of the applications.

{¶ 6} Though Hughes never had any contact with the hiring committee, he received a phone call from someone at YSU informing him that his application would not be considered. Hughes then sent a letter to YSU dated April 4, 2017 stating he believed the failure to consider his application was a mistake. YSU responded in an April 7, 2017 letter explaining that the search committee had conducted its initial review of applicants on March 10, 2017 and that Hughes's application was not considered as it was not submitted until after the initial applicant review.

{¶ 7} There are 18 full-time police officers in the YSU Police Department and approximately 63 intermittent police officers. Hughes worked as an intermittent police officer for YSU for over 30 years, most recently as a dormitory officer on Fridays through Sundays. Hughes was employed by YSU at the time he submitted his application for the chief of police position.

{¶ 8} On May 25, 2017, Hughes filed a charge of discrimination against YSU with the Ohio Civil Rights Commission ("OCRC"). The OCRC ultimately found there was no probable cause to file a complaint.

{¶ 9} Hughes filed a memorandum contra YSU's motion for summary judgment on December 4, 2019. Hughes argued there remained a genuine issue of material fact as to whether he was treated differently from similarly situated individuals outside of his protected class. Specifically, Hughes asserted that YSU's selection process was a sham designed to award the chief of police position to a white man. In support of his position, Hughes points to (1) YSU's failure to communicate to the public that it intended to stop considering applications after March 10, 2017, (2) YSU's failure to extend any second-round interviews to African-American candidates, (3) the search committee's composition of only white men, and (4) Hughes's position that he was more qualified for the position of chief of police than the successful applicant. YSU filed a reply in support of its motion for summary judgment, arguing Hughes failed to support his arguments with Civ.R. 56 evidence and that his arguments were irrelevant to the ultimate question before the court.

{¶ 10} In a January 3, 2020 decision, the trial court granted YSU's motion for summary judgment. As an initial matter, the trial court found it lacked jurisdiction to consider Hughes's claims brought under 42 U.S.C. 1983 and dismissed those claims. The trial court then determined that, construing the evidence most strongly in favor of Hughes,

although Hughes was able to demonstrate a prima facie case of race discrimination, YSU was able to demonstrate a legitimate non-discriminatory reason for not selecting Hughes for employment. Thus, the trial court concluded that because Hughes failed to present evidence that would lead a reasonable person to believe that the reason given for not considering his application was merely a pretext, YSU was entitled to summary judgment on Hughes's claim for employment discrimination based on race. Additionally, the trial court concluded Hughes did not present evidence supporting his claim for retaliation, noting Hughes did not file his complaint with the OCRC until after he had been notified by YSU that his application for the chief of police position would not be considered. The trial court journalized its decision entering judgment in favor of YSU in a January 3, 2020 judgment entry. Hughes timely appeals.

## II. Assignment of Error

{¶ 11} Hughes assigns the following error for our review:

> The trial court erred when it granted summary judgment on plaintiff's race discrimination claim under R.C. 4112.

## III. Discussion

{¶ 12} In his sole assignment of error, Hughes argues the trial court erred in granting YSU's motion for summary judgment. More specifically, Hughes asserts there remain genuine issues of material fact on his claim of race discrimination. Hughes does not challenge the trial court's disposition of his 42 U.S.C. 1983 claims or his retaliation claim.

{¶ 13} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 14} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 15} Hughes claims that YSU discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act, codified in 42 U.S.C. 2000e, and R.C. Chapter 4112.

{¶ 16} R.C. Chapter 4112 governs anti-discrimination actions brought under Ohio law. R.C. 4112.02(A) provides that it is an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.99 authorizes civil actions for any violations of R.C. Chapter 4112. And pursuant to 42 U.S.C. 2000e-2(a), "[i]t shall be an unlawful employment practice for an employer — (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Generally, Ohio courts look to federal anti-discrimination case law when examining employment discrimination cases made under state law. *Nelson v. Univ. of Cincinnati*, 10th Dist. No. 16AP-224, 2017-Ohio-514, ¶ 31, citing *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 15. *But see Williams v. Akron*, 107 Ohio St.3d 203,

2005-Ohi0-6268, ¶ 31 (stating Ohio courts are not bound to federal interpretation of analogous statutes).

{¶ 17} In order to prevail in an employment discrimination case, a plaintiff must prove discriminatory intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th Dist.1998), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583 (1996); *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983), fn. 3. Where, as here, a plaintiff seeks to establish discriminatory intent through indirect methods of proof, the claim is subject to the burden-shifting analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), first adopted by the Supreme Court of Ohio in *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 197 (1981). A plaintiff claiming discrimination in employment through indirect evidence must first demonstrate a prima facie case of discrimination. *Bowditch v. Mettler Toledo Internatl., Inc.*, 10th Dist. No. 12AP-776, 2013-Ohio-4206, ¶ 15. If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate nondiscriminatory reason for the challenged action. *Id.* at ¶ 16. If the employer meets its burden of production, a plaintiff must prove by a preponderance of the evidence that the employer's legitimate nondiscriminatory reason is merely a pretext for unlawful discrimination. *Id.* at ¶ 17.

{¶ 18} A plaintiff establishes a prima facie case of discrimination by showing that: (1) he or she was a member of a statutorily protected class, (2) he or she was subjected to an adverse employment action, (3) he or she was qualified for the position, and (4) he or she was replaced by, or that the removal permitted the retention of, a person not belonging to the protected class. *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 15. The trial court found that summary judgment in favor of YSU was warranted because, pursuant to the burden-shifting analysis, YSU put forth a legitimate non-discriminatory basis for not hiring Hughes, namely that YSU had internally closed the application date and had already selected candidates for second-round interviews by the time Hughes applied. Thus, as Hughes was unable to respond with additional evidence demonstrating that reason was mere pretext, the trial court granted summary judgment in favor of YSU. While we agree with the trial court that YSU put forth

a legitimate non-discriminatory basis for not hiring Hughes and that Hughes did not demonstrate the reason was pretext, we find that summary judgment in favor of YSU was warranted here for a more fundamental reason: Hughes did not demonstrate a prima facie case of discrimination.

{¶ 19} There is no dispute that Hughes is African American, that he was qualified for the position, and that YSU hired a person not belonging to the protected class for the chief of police position. At issue, however, is the second element of a prima facie case. In its analysis, the trial court seemed to assume that YSU's decision not to hire Hughes constituted an adverse employment action. A court determines whether an employer's actions constitute an adverse employment action on a case-by-case basis. *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340, ¶ 38 (10th Dist.). Generally, a refusal to hire is an adverse employment action within the meaning of R.C. 4112.02. *See id.* at ¶ 39. Here, however, the Civ.R. 56 evidence submitted in support of YSU's motion for summary judgment demonstrated that YSU never even considered Hughes's application for employment because its internal deadline for the submission of applications had already passed. On these facts, it cannot be said YSU refused to hire Hughes. Simply put, YSU never considered Hughes's application because Hughes applied after the internal deadline. Under these specific circumstances, we do not construe YSU's failure to consider Hughes's application to be an adverse employment action as is required for a prima facie case of discrimination. Instead, Hughes's application for a job that had already closed its deadline for applications is more akin to a prospective job applicant failing to apply for the job at all. *See, e.g., Hargrette v. RMI Titanium Co.*, 11th Dist. No. 2009-T-0058, 2010-Ohio-406, ¶ 36 (plaintiff failed to demonstrate a prima facie case of employment discrimination based on refusal to hire where plaintiff did not actually apply for the position because it paid less and required more schooling).

{¶ 20} We are mindful that at the time Hughes submitted his application for the chief of police position, YSU still had the job opening listed on its website and had not yet filled the position. However, the undisputed evidence submitted in support of YSU's motion for summary judgment is that the search committee had set an internal deadline for submission of applications of March 10, 2017. Hughes did not submit his application until 13 days after the internal deadline, by which time YSU had conducted first-round

interviews and had identified the candidates that would move on to second-round interviews.  Not only did YSU not consider Hughes's application submitted after the internal deadline, it did not consider *any* applications from other prospective employees who submitted their applications after March 10, 2017.  Hughes does not provide any evidence that YSU indicated it would, or was required to, keep the application window open until a certain date, nor does Hughes demonstrate that YSU was required to notify the public of its internal deadline on the application window.  Accordingly, we find YSU's non-consideration of Hughes's employment application submitted after the internal deadline for submission of applications does not constitute an adverse employment action within the meaning of the *McDonnell Douglas* burden-shifting analysis.  Thus, as Hughes did not satisfy the second element of a prima facie case of discrimination, YSU was entitled to summary judgment.

{¶ 21}  We overrule Hughes's sole assignment of error.

**IV.  Disposition**

{¶ 22}  Based on the foregoing reasons, the trial court did not err in granting YSU's motion for summary judgment, though we reach that conclusion for different reasons than the trial court.  Having overruled Hughes's sole assignment of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BROWN and MENTEL, JJ., concur.

———————————