[Cite as *Jones v. Ohio State Univ. Wexner Med. Ctr.*, 2026-Ohio-1149.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kimberly Jones, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 25AP-186 |
| v. | : | (Ct. of Cl. No. 2023-00266JD) |
| Ohio State University | : | (REGULAR CALENDAR) |
| Wexner Medical Center, | | |
| | : | |
| Defendant-Appellee. | | |
| | : | |

D E C I S I O N

Rendered on March 31, 2026

**On brief:** *Kemp, Schaeffer & Rowe Co., LPA, Erica Ann Probst*, and *Andrea L. Salvino*, for appellant. **Argued:** *Erica Ann Probst*.

**On brief:** *Dave Yost*, Attorney General, and *Daniel J. Benoit*, for appellee. **Argued:** *Daniel J. Benoit*.

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Kimberly Jones, appeals from a judgment of the Court of Claims of Ohio granting the motion for summary judgment of defendant-appellee, Ohio State University Wexner Medical Center. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} This matter arises from an employment dispute between appellant and appellee.

{¶ 3} On August 7, 2017, appellee hired appellant as the Director of Central Sterile Processing ("CSS"). Appellant characterized her role as overseeing the surgical instrument decontamination and sterilization for appellee's healthcare system.

{¶ 4} In deposition testimony, appellant stated that her position was created after there had been years of quality issues and operating room delays relating to perioperative services. She also stated that, after her hire, she was assigned a human resources coach due to the presence of toxic relationships and hostility toward the department arising out of organizational changes and perceived quality issues.

{¶ 5} In June 2021, appellant's supervisor resigned. In December 2021, appellee hired Calen Bowshier who became the Administrator for Perioperative Services and CSS and, in that role, served as appellant's direct supervisor.

{¶ 6} Bowshier stated in an affidavit that, after he conducted appellant's performance evaluation in August 2022, he began to receive reports from key stakeholders that appellant's department was struggling. He stated that his concern with appellant's performance was "her lack of effective leadership, poor communication, and failure to proactively and strategically address the root causes of recurring issues and ongoing dissatisfaction," with CSS. (Bowshier Aff. at ¶ 8.)

{¶ 7} In deposition testimony, appellant stated she "felt supported" by Bowshier until August 2022 when he conducted a performance evaluation with her. (Jones Depo. at 85-86.) She said she felt that Bowshier wanted a different employee to run the department.

{¶ 8} Eventually, Bowshier placed appellant on a performance improvement plan ("PIP"). Bowshier stated that he continued to receive complaints about appellant and that, ultimately, he recommended that appellant be terminated "[a]s a result of the compounding problems at CSS and high turnover rate under [appellant's] directorship." (Bowshier Aff. at ¶ 16.)

{¶ 9} On October 27, 2022, appellee terminated appellant. At the time, appellant was 53 years old. Bowshier stated in his affidavit that appellant was terminated from her position due to unsatisfactory job performance.

{¶ 10} Following her termination, appellant's duties were assumed by two existing employees in the department; specifically, Benjamin Lawler and Jennifer Baughman.

{¶ 11} On April 6, 2023, appellant filed a complaint in the Court of Claims, asserting claims for age and gender[1] discrimination under federal and state law.

{¶ 12} On September 12, 2024, appellee moved for summary judgment.

{¶ 13} On January 29, 2025, the Court of Claims filed a decision granting appellee's motion for summary judgment.

## II. Assignment of Error

{¶ 14} Appellant appeals and assigns the following assignment of error for our review:

> The trial court's decision to grant Appellee Ohio State University Wexner Medical Center's ("OSU") Motion for Summary Judgment was improper as a matter of fact and a matter of law.

## III. Discussion

{¶ 15} An appellate court reviews summary judgment under a de novo standard. *Brisco v. U.S. Restoration & Remodeling, Inc.*, 2015-Ohio-3567, ¶ 19 (10th Dist.), citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist. 1995). Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 1997-Ohio-221.

{¶ 16} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 1996-Ohio-107. If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or

---

[1] In her complaint, appellant alleges that she experienced discrimination on the basis of being female. Although she labels this as gender discrimination in her complaint, the relevant federal and state statutes refer to discrimination on the basis of sex. *See* 42 U.S.C. 2000e-2(a)(1); R.C. 4112.02(A). For purposes of this decision and to be consistent with the language used in the statutes, we will refer to appellant's claim as one for sex discrimination.

otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 2012-Ohio-5036, ¶ 12 (10th Dist.), citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist. 1991).

{¶ 17} Here, appellant asserted claims alleging that appellee discriminated against her on the basis of her age and sex in violation of federal and state law.

{¶ 18} Under the Age Discrimination in Employment Act of 1967 ("ADEA"), 81 Stat. 602, as amended, 29 U.S.C. 621 *et seq.*, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. 623(a)(1); *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 141 (2000). Title VII from the Civil Rights Act of 1964 prohibits an employer from discharging an employee because of an employee's sex. *See* 42 U.S.C. 2000e-2(a)(1).

{¶ 19} Under Ohio law, R.C. Chapter 4112 governs anti-discrimination actions. R.C. 4112.02(A) provides that it is an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.99 authorizes civil actions for any violations of R.C. Chapter 4112.

{¶ 20} Generally, Ohio courts look to federal anti-discrimination case law when examining employment discrimination cases pursued under state law. *Nelson v. Univ. of Cincinnati*, 2017-Ohio-514, ¶ 31 (10th Dist.), citing *Coryell v. Bank One Trust Co., N.A.*, 2004-Ohio-723, ¶ 15. *But see Williams v. Akron*, 2005-Ohio-6268, ¶ 31 (stating Ohio courts are not bound to federal interpretation of analogous statutes).

{¶ 21} In order to prevail in an employment discrimination case, a plaintiff must prove discriminatory intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th Dist. 1998), citing *Mauzy v. Kelly Servs., Inc.*, 1996-Ohio-265; *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, fn. 3 (1983). " '[D]irect evidence [of discrimination] is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.' " *Ray v. Ohio Dept. of Health*, 2018-Ohio-2163, ¶ 27 (10th

Dist.), quoting *Ceglia v. Youngstown State Univ.*, 2015-Ohio-2125, ¶ 16 (10th Dist.) (further citations omitted).

{¶ 22} A plaintiff may indirectly establish discriminatory intent using the analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 197 (1981). A plaintiff claiming employment discrimination through indirect evidence must first demonstrate a prima facie case of discrimination. *Bowditch v. Mettler Toledo Internatl., Inc.*, 2013-Ohio-4206, ¶ 15 (10th Dist.). A plaintiff establishes a prima facie case of discrimination by showing that(1) he or she was a member of a statutorily protected class, (2) he or she was subjected to an adverse employment action, (3) he or she was qualified for the position, and (4) he or she was replaced by, or that the removal permitted the retention of, a person not belonging to the protected class. *Hall*, 2012-Ohio-5036, at ¶ 15 (10th Dist.).

{¶ 23} If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate non-discriminatory reason for the challenged action. *Id.* at ¶ 16. If the employer meets its burden of production, a plaintiff must prove by a preponderance of the evidence that the employer's legitimate non-discriminatory reason is merely a pretext for unlawful discrimination. *Id.* at ¶ 17.

{¶ 24} In the instant case, there is no dispute that appellant sought to prove her discrimination claim through indirect evidence and, therefore, the *McDonnell Douglas* burden-shifting analysis applies. With respect to the first step of the analysis—a prima facie case of discrimination—appellee argued before the trial court that appellant could not satisfy the fourth prong because appellant was not replaced and, instead, her duties were distributed between two existing employees of the department. The trial court declined to resolve whether appellant could establish a prima facie case because it determined the case could instead be resolved on the third step of the *McDonnell Douglas* analysis; namely, that the reasons offered for her termination were a pretext for discrimination. With respect to the second step of the *McDonnell Douglas* analysis, the trial court found that appellee had presented evidence that its basis for terminating appellant—unsatisfactory job performance—was a legitimate, non-discriminatory reason.

{¶ 25} These conclusions have not been challenged by the parties in this appeal. Thus, we focus our analysis on the third step of the *McDonnell Douglas* analysis and whether there is a genuine issue of material fact regarding whether appellee's proffered reason for appellant's termination was a pretext for discrimination.

{¶ 26} Generally, courts have found that a plaintiff establishes pretext by proving one or more of the following: (1) the employer's proffered reasons for the adverse employment action had no basis in fact, (2) the proffered reasons were not the true reason(s), or (3) the proffered reason(s) were insufficient to motivate discharge. *See, e.g., Mittler v. OhioHealth Corp.*, 2013-Ohio-1634, ¶ 44 (10th Dist.); *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *abrogated on other grounds* by *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), as recognized in *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009). In *Manzer*, the Sixth Circuit Court of Appeals described the type of showing required for each of the three possible bases of pretext:

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are "factually false." [*Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1123-24 (7th Cir. 1994).] The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employee's [sic] proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." [*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)]. As [*St. Mary's*] teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.
>
> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation

> was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

(Emphasis in original.) *Manzer* at 1084.

{¶ 27} Importantly, regardless of the method used to refute the employer's proffered reason, "the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." (Internal quotation marks omitted.) *Johnson* at 866, quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

{¶ 28} At the summary judgment stage, for the third prong of the *McDonnell Douglas* analysis, a plaintiff "must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011), quoting *Macy v. Hopkins Cty. School Bd. of Edn.*, 484 F.3d 357, 364 (6th Cir. 2007), *overruled in part by Lewis Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012). "In evaluating pretext and the plaintiff's ultimate burden, the court should consider all evidence in the light most favorable to the plaintiff." *Provenzano* at 812.

{¶ 29} In the instant case, appellant has offered several grounds why we should find there to be a genuine dispute of material fact regarding whether appellee's reasons for her termination are a pretext for age and sex discrimination. In her brief, appellant presents a table that cites five examples of conduct that Bowshier included in a letter he sent to appellee's human resources department to request appellant's termination. The letter cites eight broad categories of performance criteria in which Bowshier represented that appellant's performance fell below expectations and it includes examples of specific conduct under each of the eight categories. Appellant's table in her brief addresses five of the specific conduct examples.

{¶ 30} Three examples of conduct described in the table relate to appellant's interaction with the Supply Chain department; namely, that appellant did not meet with Supply Chain to review and understand their operational goals and objectives, that she failed to start a steering committee for Supply Chain and CSS, and that she failed to obtain

a three-year business plan from CSS. Appellant argues that, despite Bowshier's representations to the contrary, she presented evidence that she did have meetings with her Supply Chain counterpart. In her deposition, however, appellant described additional context regarding her working relationship with Supply Chain. For example, appellant explained that there was "innate hostility" between her and her counterpart in Supply Chain, Brittany Locklear, after the opening of the offsite facility shared by CSS and Supply Chain, and that Locklear had shared that appellant "was difficult to work with." (Jones Depo. at 26-27.) Appellant also testified that the head of the Supply Chain department "started to have a problem with her" after he began to make decisions that she felt would negatively impact her department. (Jones Depo. at 28). Appellant also testified that she could not meet with Locklear despite that being an action item on her PIP because "I had asked her for her operational plan months in advance of even the PIP," and "I've been provided nothing," and "I can't meet with somebody if I don't have their plan." (Jones Depo. at 144.) Additionally, it was originally appellant, not Bowshier, who had identified the "need to merge our operational plan with that of Supply Chain" as she wrote in her Personalized Performance Plan in August 2022. (Ex. 4 to Pl.'s Memo Contra to Def.'s Mot. for Summ. Jgmt.)

{¶ 31} Regarding Bowshier's accusation about appellant's failure to implement a steering committee, appellant acknowledged in her deposition that "it may not have been formally called a steering committee," but that she nonetheless met weekly with employees from Supply Chain. (Jones Depo. at 144.) She noted that her counterpart in Supply Chain at the time of her PIP did not think they needed to meet more often because "she felt everything was going fine." (Jones Depo. at 143.)

{¶ 32} Appellant's evidence demonstrates that there were identifiable challenges in her relationship with Supply Chain that affected her ability to obtain information that she believed was needed for the job. But we do not find that appellant's evidence presents a material dispute of fact regarding whether Bowshier's representations that appellant's interactions with Supply Chain had fallen below expectations were false or otherwise insufficient to motivate her termination.

{¶ 33} Another example of conduct that appellant presents in the table in her brief is Bowshier's accusation that he had to field concerns from clinical staff because they

bypassed appellant. Appellant argues that she refuted this basis for her termination with evidence that she had "identified solutions to the clinical team's problems and came up with solutions." (Appellant's Brief at 24.) But, in her deposition, appellant also stated that the clinical team "felt disrespected" by her, and that her efforts to educate the clinical team on sterilization procedures were "not received." (Jones Depo. at 26, 30.) Appellant also described a meeting with clinical staff about quality issues as becoming "pretty hostile" and that "there had been repetitive attempts on my part to help them understand my concern," and that, following the meeting, it was recommended she get a human resources coach "regarding professionalism." (Jones Depo. at 33-35.) Appellant also stated that, in response to her PIP, "I did not feel that I should be held accountable with being solely responsible for disruptions in service to the operating room when I had repetitively asked that the nurse managers and the nursing leaders provide us factual information via our iPad application and received continual resistance to partner." (Jones Depo. at 127.) Appellant stated she had wanted Bowshier's help with the situation but acknowledged that she did not know whether nursing leaders reported to Bowshier. She felt she was a "scapegoat" for problems in the operating room and that it had been that way for "many, many years." (Jones Depo. at 129.)

{¶ 34} Based on the foregoing, we cannot find that appellant has presented a material dispute of fact regarding whether Bowshier's stated concern about appellant's relationships with clinical staff were false or insufficient to motivate her termination.

{¶ 35} In the table in her brief, appellant also argues that she presented evidence to rebut Bowshier's statement in his termination letter that she had failed to display strategic insight to recruit and retain leadership and staff. Appellant cites evidence that she created the department's three-year strategic plan.

{¶ 36} Despite Bowshier's representation in the termination letter, he had noted in appellant's Personalized Performance Plan in August 2022 that one of appellant's strengths was recruitment, noting that she had "recently recruited several strong leaders to join her team." (Ex. 4 to Pl.'s Memo Contra to Def.'s Mot. for Summ. Jgmt.) Bowshier's termination letter does not detail what changed in the area of appellant's performance between his August 2022 evaluation and termination request. Based on the foregoing, it does appear that appellant has presented evidence that could refute Bowshier's statement that she failed

to display strategic insight to recruit and retain leadership and staff. However, because this is not the only basis cited for appellant's termination, we do not find that this evidence alone is sufficient to create a material dispute of fact whether appellee's reasons for appellant's termination were a pretext for discrimination.

{¶ 37} Appellant also argues in her brief that she provided the following evidence to show that appellee's basis for her termination was false: "(1) Lawler and Baughman engaged in the same conduct; (2) CSS's [key performance indicators] have remained low; (3) CSS turnover is still a problem; (4) stakeholders still go directly to Bowshier; and (5) Bowshier accepted Jones' protocols and solutions when proposed by Lawler." (Appellant's Brief at 41.) Similarly, appellant argues that she presented the following evidence purporting to demonstrate that her termination was not "actually motivated" by the reasons offered:

> (1) Bowshier emailed Dennis Delisle about his intent to get rid of Jones and replace her with Lawler before placing Jones on the PIP . . .; (2) Lawler and Baughman engaged in the same conduct for which Jones was terminated (see comparison chart in Section II(F) [in brief]); and (3) CSS still uses Jones' three-year plan even though Bowshier never acknowledged Jones created it[.]

(Appellant's Brief at 43-44.)

{¶ 38} Much of appellant's argument here appears to direct the court to what happened in the department after appellant's termination and, more specifically, to the fact that issues in the department persisted following her termination. The fact that the department continued to experience challenges is consistent with appellant's deposition testimony that significant issues pre-dated her hire and continued during her leadership. (*See* Jones Depo. at 25 noting that appellant's predecessor was not well-liked and acknowledging that she "had become not well liked.") In fact, appellant acknowledged in her brief that, because of the hostile relationship between her department and one of the hospital systems it serviced, "any person in [her] position was set up for failure." (Appellant's Brief at 7.) That issues continued following appellant's termination may indicate that appellant was not the sole cause of the problems the department experienced, but it does not, in light of the other evidence, present a dispute of fact regarding whether appellee's proffered reasons for her termination were false or did not actually motive her

discharge. "[I]t is not the role of the judiciary to 'second guess business judgments by an employer making personnel decisions.' " *Morrissette v. DFS Servs., L.L.C.*, 2013-Ohio-4336, ¶ 40 (10th Dist.), quoting *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d 663, 669 (9th Dist. 1990). *See also Brown v. Renter's Choice, Inc.*, 55 F.Supp.2d 788, 795 (N.D.Ohio 1999), quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("An employer may make employment decisions 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.' "). "Courts are not to judge whether an employer made the best or fairest decision, but to determine whether the decision would not have been made but for discrimination on the basis of age." *Mittler*, 2013-Ohio-1634, at ¶ 52 (10th Dist.).

{¶ 39} Appellant also argues that Lawler and Baughman have not been disciplined for persisting issues in the department. In order for that comparison to be persuasive, appellant must demonstrate that she is similarly situated to Lawler and Baughman in relevant respects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352-53 (6th Cir. 1998). First, appellant has not argued that either of the employees, Lawler or Baughman, have exactly the same duties or professional expectations that appellant did. In fact, Lawler testified in his deposition that he took over only a portion of appellant's duties following her termination and that some duties were assigned to him and some to Baughman. Appellant has also pointed to no evidence regarding what standards or expectations have been set for Lawler or Baughman following her termination. Thus, we cannot find that it is reasonable to infer from the absence of discipline experienced by Lawler and Baughman following appellant's termination that appellee's reasons for the termination were a pretext for discrimination.

{¶ 40} Appellant also argues that the reasons offered for her termination were false because Bowshier accepted her protocols and solutions when proposed by Lawler. But, in her deposition testimony, appellant noted that Lawler had helped her put the three-year operational and financial plan into writing. Lawler testified that, although the three-year plan was approved in Spring 2022 before appellant was terminated, it provided for new employee hires in fiscal years 2023 and 2024. Thus, it was intended to be implemented beyond 2022.

{¶ 41} On these facts, we do not find that appellant has demonstrated a material dispute of fact regarding whether appellee's proffered reason for her termination—unsatisfactory job performance—had no basis in fact, was not the true motivation for her termination, or was insufficient to motivate discharge. Nonetheless, we recognize that independent evidence of discrimination may tip the scales regarding pretext. *See Coryell v. Bank One Trust Co., N.A.*, 2008-Ohio-2698, ¶ 41 (10th Dist.), citing *Reeves*, 530 U.S. at 148 (noting that "a plaintiff need not always introduce independent evidence of discrimination to show pretext where there is sufficient evidence to reject the employer's explanation").

{¶ 42} Here, appellant argues that Bowshier used the word "archaic" to describe appellant's work and, from that, we should infer a discriminatory motive by her termination. However, appellant provides no direct evidence of this statement being attributed to Bowshier. Instead, she cites her own deposition testimony in which she stated as follows:

> A: There were definite insinuations made regarding - - archaic was a word that was used a lot in describing some of the practices that I had in place to my Department prior to us building the dashboard. I mean, those are the things that come to my mind right now.
>
> Q: . . . Archaic with respect to?
>
> A: Like recordkeeping; you know, documentation of quality events; you know, the paper; the Excel spreadsheet.
>
> Q: You perceived that's related to age or being - -
>
> A: Yes. Very much.

(Jones Depo. at 168.)

{¶ 43} We find this reference to "archaic" to be ambiguous regarding whether it was made in relation to appellant's age or in relation to the practices she had in place in the department. "[I]solated and ambiguous comments 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.' " *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993), quoting *Gagne v. Northwestern Natl. Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989), *cert. denied*, 510 U.S. 861 (1993).

{¶ 44} Regarding sex discrimination, appellant stated in her deposition that she felt an employee in Supply Chain treated her badly because she was a woman. But this person was not her supervisor nor one of her reporting employees and appellant points to no evidence that this person had influence over her termination. We also note that some of appellant's duties following her termination were assumed by Lawler, a man. However, Lawler was already an employee in the department who had been significantly involved with appellant's strategic planning for CSS and there is no evidence he was not qualified for the additional duties assigned. Additionally, some of appellant's duties were assumed by Baughman, a woman. Based on the foregoing, we do not find that appellant has established a genuine dispute of material fact to reasonably infer that her termination was a pretext for age or sex discrimination.

{¶ 45} In sum, on consideration of the arguments presented and the record before us, and construing the evidence in appellant's favor, we do not find that appellant has presented a genuine issue of material fact regarding whether appellee's reason for her termination—unsatisfactory job performance—was a pretext for discrimination. Because appellant has not made the required showing at the summary judgment stage to demonstrate a dispute of fact regarding this prong of the *McDonnell Douglas* analysis, we agree with the Court of Claims that appellee is entitled to judgment as a matter of law. Accordingly, we conclude the Court of Claims did not err in granting summary judgment to appellee on appellant's claims.

## IV. Conclusion

{¶ 46} Based on the foregoing, we overrule appellant's sole assignment of error and affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

EDELSTEIN and LELAND, JJ., concur.

––––––––––––––